[No. 36939-7-II. Division Two. February 3, 2009.]

DWAYNE D. LENCA, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

566

*Marcus R. Lampson* (of *Unemployment Law Project*), for appellant.

568

*Robert M. McKenna, Attorney General*, and *Pedro Bernal IV* and *Matthew J. Tilghman-Havens, Assistants*, for respondent.

¶1 HUNT, J. — Dwayne D. Lenca appeals the Employment Security Department commissioner's (Commissioner) denial of unemployment benefits when the Commissioner affirmed the administrative law judge's (ALJ) denial without allowing additional evidence. Lenca argues that (1) the ALJ denied him a fair hearing in failing to continue the telephonic hearing sua sponte when pro se Lenca announced that he had a job interview scheduled for the same time; (2) the Commissioner erred in refusing to accept additional evidence from Lenca tending to show that the ALJ had based her decision on incomplete information and inaccurate facts from Lenca's employer in Lenca's absence; and (3) sufficient evidence does not support the Commissioner's finding of fact 9. Lenca also requests attorney fees on appeal.

¶2 Holding that the Commissioner should have ordered the ALJ to accept additional evidence, we vacate the Commissioner's decision denying Lenca unemployment benefits and remand with instructions for the Commissioner to remand to the ALJ to take additional evidence, to reconsider her findings of fact and conclusions of law, and to issue a new decision setting aside or modifying the previous decision. We grant Lenca attorney fees and costs on appeal under RCW 50.32.160.

## FACTS

### I. TERMINATION OF EMPLOYMENT

¶3 Dwayne Lenca began his job as a customer service route manager for Schwan's Home Service on April 10, 2006. Schwan's originally paid Lenca a guaranteed, set salary of $600 per week.

¶4 After five weeks on the job, Schwan's "step[ped]-down" Lenca's guaranteed salary and started paying him on a commission basis. Consequently, instead of paying Lenca a guaranteed $120 per day ($600 per week), Schwan's began paying him an 11 percent commission plus a guaranteed $30 per day ($150 per week).[1] On August 15, Lenca quit his job because the change in payment method had "drastically reduced" his pay.

### II. PROCEDURE

¶5 Lenca applied for unemployment benefits. On September 27, the State of Washington Employment Security Department (Department) found that he "ha[d] . . . established" good cause to quit his job "because [he] separated due to a decrease of 25 percent or more to [his] pay compensation," Commissioner's Record (CR) at 36, which entitled him to unemployment benefits under RCW 50.20-.050(2)(b)(v). The Department approved Lenca's application for unemployment benefits and sent him a "determination letter" to this effect.

### A. Schwan's Appeal to ALJ

¶6 Schwan's appealed the Department's decision. Schwan's argued that Lenca was not eligible for unemployment benefits because (1) he had quit voluntarily; (2) at the time

---

[1] Apparently, the guaranteed daily amount would have decreased by five dollars every four weeks until Schwan's paid Lenca commission only.

of hire, he had known about the change from a set salary to commission-based pay; and (3) Schwan's was not at fault. Schwan's submitted several documents with its appeal, including (1) a new employee form, part of which Lenca had filled out and signed and part of which a manager had completed and signed; (2) two "pay status" forms indicating that Schwan's had been paying Lenca $30 per day plus full commission; and (3) an "earnings worksheet" tracking the step-down schedule for Lenca's pay. Schwan's did not submit any payroll records showing how much it had actually paid Lenca each pay period, including the period during which Lenca had quit.

¶7 Sometime before November 1, Lenca made arrangements for several out-of-state job interviews, including one on November 16. On November 1, the Office of Administrative Hearings mailed a notice to Schwan's and Lenca, informing them that a telephonic hearing was scheduled before an ALJ to determine whether Lenca was entitled to unemployment benefits. This hearing was set for November 16 at 7:45 AM.

¶8 The notice included a booklet titled "How to Prepare and Present Your Case"[2] and the address of a web site[3] where the parties could obtain more information about the hearing process. The notice also contained several exhibits, including (1) a copy of the Department's determination letter stating that Lenca was entitled to unemployment benefits; (2) the notice that Schwan's had filed an appeal; (3) Schwan's request for an appeal and the documents Schwan's had submitted with that request; and (4) the form that the Department had sent to Schwan's, which Schwan's had filled out and returned. The determination letter stated, "Good cause for quitting [his] job ha[d] been established because [he] separated due to a decrease of 25 percent or more to [his] pay compensation." CR at 36.

---

[2] That booklet is not part of the record on this appeal.

[3] The web site is www.oah.wa.gov (last visited Dec. 3, 2008).

¶9 The ALJ hearing notice did not inform Lenca that he would have to prove again that his pay had been reduced by 25 percent. Nor did the hearing notice inform Lenca that at the hearing he would otherwise have to substantiate the Department's previous determination letter entitling him to unemployment benefits.

¶10 Lenca participated in the telephonic hearing pro se. George Parlee, a local general manager for Schwan's, also appeared by telephone, without counsel, on Schwan's behalf. At the beginning of the hearing, Lenca informed the ALJ that (1) he was on his way to a job interview that was to begin in about 20 minutes, (2) he had earlier spoken with someone in the ALJ's office and explained that he was on his way to a job interview, but (3) he did not know whether his message had been forwarded to the ALJ.[4] The ALJ responded, "[W]e'll proceed as quickly as possible. And then when you're ready to go I'll let you make that decision." CR at 7.

¶11 After swearing in Lenca and Parlee telephonically, the ALJ identified the exhibits included in the notice of the appeal and asked Lenca and Parlee if they had any objections. Lenca objected to the new employee form because Schwan's had not completed the employer portion of that form when he signed it. Parlee did not object to any of the exhibits. Noting Lenca's objection, the ALJ admitted all the exhibits.

¶12 Lenca testified that he had quit his job because his "income was drastically reduced" when Schwan's stopped paying him a guaranteed $600 per week and started paying him partially on a commission basis. At the end of his testimony, Lenca informed the ALJ that it was time for him to leave for his job interview. The ALJ replied that the hearing would continue in Lenca's absence and that, if Lenca left, he would forgo the opportunity to question Parlee. Lenca asked if he would be able to respond in writing or by e-mail, but the ALJ told him that he would

---

[4] Lenca did not specify with whom he had spoken or that person's response.

not. Lenca then left the telephonic hearing for his job interview.

¶13 The ALJ then allowed Parlee to testify in Lenca's absence. Parlee testified that under the "step down method," Schwan's had paid Lenca $30 per day plus 11 percent commission "so that [Lenca] wouldn't go backwards in pay." CR at 21. Parlee then stated:

> I don't have any pay stubs or anything that I can bring up. But I did bring up different reports showing he did not go backwards in his pay. The pay issue, what he told me was he had two or three -- well, one or two people garnishing his wages. And that was why he wasn't making enough money. But he was making the [$]600 all the way through.

CR at 21. Contrary to Parlee's testimony that he had brought with him "different reports showing [Lenca] did not go backwards in his pay," none of the exhibit documents show how much Schwan's had actually paid Lenca each week. CR at 21. Nor did Parlee explain why Schwan's was unable to produce its payroll records, copies of Lenca's pay stubs, or other documentary evidence showing how much it had actually paid Lenca. Similarly, the record does not substantiate Parlee's speculation that if Lenca had not been receiving $600 per week, it was because his wages were being garnished: Nothing in the record before us shows that Lenca's wages were being garnished.[5]

¶14 Later in the hearing, the ALJ questioned Parlee specifically to be sure that Schwan's had still been paying Lenca $600 per week at the time he quit:

Q. At the time Mr. Lenca quit is it your testimony that he was receiving $600 a week?

A. Yes.

Q. Between his step down and between his commission he was still taking home $600 a week.

A. Yes.

---

[5] The pay stubs that Lenca submitted when he petitioned the Commissioner for review show deductions only for taxes, not for garnishment. CR at 66.

. . . .

Q. . . . If at the end of the week he hadn't earned enough commission to total the $600, would that step down of $30 have been increased to offset so however it falls at the end of the week he's still taking home $600 whether it's in commission or an increase in the step down?

A. Yeah.

CR at 29-31.[6]

¶15 On November 17, the ALJ issued an initial order setting aside the Department's decision granting Lenca unemployment benefits. The ALJ found:

Mr. Parlee . . . established that at the time [Lenca] left his job, he was still making $600.00 a week. Mr. Parlee admits that part of that was a guarantee and other part was commission, *but at a minimum, [Lenca] was taking home $600 a week.*

CR at 50 (Finding of Fact 9) (emphasis added). Based on her findings of fact, the ALJ concluded:

[W]hile claimant's pay was subject to change, the changes did not result in a 25 [percent] decrease and had not taken effect to total any decrease in income at the time claimant quit his job. . . . *At the time of job separation, [Lenca's] base guaranteed rate of $600.00 a week had not changed.*

CR at 52-53 (Conclusion of Law 5) (emphasis added). She further concluded that, because Lenca's pay had not been reduced at all and, thus, not reduced by more than the 25 percent required for "good cause" to quit under RCW 50.20.050(2)(b)(v), he was not entitled to unemployment benefits.

## B. Lenca's Appeal to the Commissioner

¶16 Still proceeding pro se, on December 5, Lenca appealed the ALJ's initial order to the Commissioner. With his appeal, Lenca submitted additional evidence, including pay

---

[6] Lenca was not aware of Parlee's contrary testimony before the ALJ until he received the ALJ's initial order.

stubs that the ALJ had not previously seen.[7] These pay stubs showed that Lenca's gross pay for the week ending August 12, 2006, the last full week he had worked before he quit, was $432.79 before any deductions, which demonstrated a reduction in pay greater than 25 percent.[8] The Commissioner refused to consider these pay stubs or Lenca's other evidence,[9] adopted the ALJ's findings of fact and conclusions of law, and affirmed the ALJ's initial order denying Lenca unemployment benefits.

## C. Lenca's Appeals to Superior Court and to Court of Appeals

¶17 Lenca appealed to the Superior Court, which affirmed the Commissioner's decision. Lenca now appeals to the Court of Appeals.

## ANALYSIS

¶18 Lenca argues that the Commissioner erred by failing to exercise his discretion to order the ALJ to take additional evidence under RCW 50.32.080.[10] We agree.

---

[7] In addition to the pay stubs, Lenca submitted his letter of resignation to Schwan's and a letter he had written to the Department clarifying that he had quit working for Schwan's because of a reduction in pay.

[8] Twenty-five percent of $600 is $150. Thus, any salary less than $450 per week was at least a 25 percent reduction in Lenca's pay, which entitled him to unemployment benefits under RCW 50.20.050(2)(b)(v).

[9] The Commissioner stated, "Absent evidence that the record below was incomplete for reasons within the control of the Office of Administrative Hearings, no additional evidence will be taken." CR at 68.

[10] Lenca also assigns error to ALJ Finding of Fact 9, which states, "Mr. Parlee has established that at the time claimant left his job, he was still making $600.00 a week. Mr. Parlee admits that part of that was a guarantee and the other part was commission, but at a minimum claimant was taking home $600 a week." But Lenca fails to make any argument or to cite to the record or any authority to support this assignment of error, contrary to the requirement of RAP 10.3(a)(6). Therefore, we do not consider this assignment of error. *See In re Marriage of Angelo*, 142 Wn. App. 622, 628 n.3, 175 P.3d 1096 (citing *Ang v. Martin*, 154 Wn.2d 477, 486-87, 114 P.3d 637 (2005)), *review denied*, 164 Wn.2d 1017 (2008).

I. Standard of Review

¶19 We review the decision of the Commissioner, rather than the administrative law judge's initial decision. *Graves v. Employment Sec. Dep't*, 144 Wn. App. 302, 308, 182 P.3d 1004 (2008) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 404-06, 858 P.2d 494 (1993)). When reviewing the Commissioner's final administrative decision, we sit in the same position as the trial court and apply the Washington Administrative Procedure Act[11] (APA) standards to the agency's entire record. *Tapper*, 122 Wn.2d at 402; *Macey v. Dep't of Employment Sec.*, 110 Wn.2d 308, 312, 752 P.2d 372 (1988). We review questions of law de novo, but we accord substantial weight to the agency's view of the law if the law is within the agency's expertise. *Macey*, 110 Wn.2d at 313. We review questions of fact under the clearly erroneous test. *Id.* at 312.

¶20 When we review matters of discretion, our role is limited to ensuring that the agency has exercised its discretion in accordance with the law and has not abused its discretion. RCW 34.05.574(1); *see also Conway v. Dep't of Soc. & Health Servs.*, 131 Wn. App. 406, 419, 120 P.3d 130 (2005). An agency abuses its discretion when it exercises its discretion in an arbitrary and capricious manner. *Conway*, 131 Wn. App. at 419. An agency acts in an arbitrary and capricious manner if its actions are willful, unreasoning, and in disregard of facts and circumstances. *Wash. Waste Sys., Inc. v. Clark County*, 115 Wn.2d 74, 81, 794 P.2d 508 (1990).

¶21 We may grant relief from an agency action only in nine enumerated circumstances, including if the order is arbitrary and capricious, the circumstance at issue here. RCW 34.05.570(3). In granting relief under the APA, we may (1) affirm the agency action; (2) set aside, enjoin, or stay the agency action; (3) order the agency to take an action required by law; or (4) order the agency to exercise

---

[11] Ch. 34.05 RCW.

discretion required by law. RCW 34.05.574; *Densley v. Dep't of Retirement Sys.*, 162 Wn.2d 210, 226, 173 P.3d 885 (2007).

## II. COMMISSIONER'S REJECTION OF ADDITIONAL HIGHLY PROBATIVE EVIDENCE

 ¶22 RCW 50.32.080 governs the procedure for the Commissioner's review of the ALJ's decision. Under this statute, the Commissioner may (1) order the ALJ to take additional evidence; (2) render a decision in writing affirming, modifying, or setting aside the decision of the appeal tribunal; or (3) order further proceedings to be held before the ALJ. RCW 50.32.080.[12] The Commissioner abused his discretion by disregarding pivotal facts and circumstances when he refused to order the ALJ to take into evidence Lenca's pay stubs. Directly controverting his employer's key testimony to the ALJ, these pay stubs showed that Lenca was receiving at least 25 percent less than $600 per week, consistent with the Department's original determination that he was entitled to unemployment benefits under RCW 50.20.050(2)(b)(v).

¶23 The record shows that the ALJ meticulously and repeatedly questioned Parlee about his assertion that Schwan's was paying Lenca $600 per week at the time he quit. Only after becoming fully convinced that Lenca's pay had not been reduced at all, let alone by at least 25 percent,

---

[12] The full text of RCW 50.32.080, titled "Commissioner's review procedure," provides:

> After having acquired jurisdiction for review, the commissioner shall review the proceedings in question. Prior to rendering his decision, *the commissioner may order the taking of additional evidence by an appeal tribunal* to be made a part of the record in the case. Upon the basis of evidence submitted to the appeal tribunal and such additional evidence as the commissioner may order to be taken, the commissioner shall render his decision in writing affirming, modifying, or setting aside the decision of the appeal tribunal. Alternatively, *the commissioner may order further proceedings to be held before the appeal tribunal*, upon completion of which the appeal tribunal shall issue a decision in writing affirming, modifying, or setting aside its previous decision. The new decision may be appealed under RCW 50.32.070. The commissioner shall mail his decision to the interested parties at their last known addresses.

(Emphasis added.)

did the ALJ enter her findings of fact and conclusions of law and decision that Lenca was not entitled to unemployment benefits under RCW 50.20.050(2)(b)(v). The ALJ reached this conclusion based solely on Parlee's testimony, which was unsupported by physical exhibits[13] and not subject to questioning by Lenca.[14] And because Lenca had not heard this testimony and reasonably could have expected his employer to testify accurately about his rate of pay, Lenca had not previously presented to the ALJ his pay stubs, which showed that, in fact, Schwan's had paid Lenca less than $450 per week when he quit, not $600 as Parlee testified.[15]

¶24 Lenca submitted his pay stubs to the Commissioner to demonstrate that the ALJ had based her findings of fact and conclusions of law on incorrect facts that his employer had submitted at the hearing in Lenca's absence. Lenca's pay stubs show that (1) Schwan's representative, Parlee, was incorrect when he repeatedly testified that Lenca was still earning $600 per week when he quit his job; (2) contrary to Parlee's testimony, Schwan's had reduced Lenca's pay by more than 25 percent;[16] and (3) this reduction was not due to garnishment, as Parlee had erroneously asserted

---

[13] Schwan's representative, Parlee, had never presented any payroll records to the ALJ; nor did the ALJ apparently request them.

[14] As we previously noted, Lenca had left the hearing before Parlee testified in order to pursue employment opportunities, which RCW 50.20.010(1)(c)(i) required. RCW 50.20.010(1)(c)(i) requires an applicant for unemployment benefits to pursue employment opportunities actively.

[15] Lenca could have avoided these appeals if he had submitted these pay stubs as evidence to the ALJ before the telephonic hearing. But the record does not show whether Lenca was aware that he had this responsibility. The state's Employment Security Department determination letter had already informed him that "[g]ood cause for quitting [his] job ha[d] been established because [Lenca] separated due to a decrease [in compensation] of 25 percent." Furthermore, the notice of the telephonic ALJ hearing did not explain that this previously "established" fact would be at issue at the hearing; nor did it notify Lenca that he might have to reprove his claim. CR at 36.

[16] For the pay period ending August 12, 2006, Lenca's gross pay was only $432.79, compared with $600.00 for the period ending May 6, 2006. Lenca's pay stubs show that Schwan's had reduced his weekly pay by more than 25 percent at the time he quit his job.

to the ALJ.[17] Thus, Lenca's pay stubs were highly probative and critically necessary to resolve the central questions of (1) whether a 25 percent, or greater, reduction in pay was good cause for Lenca to quit his employment with Schwan's under RCW 50.20.050(2)(b)(v) and (2) therefore, whether he was entitled to unemployment benefits. But the Commissioner apparently refused to consider ordering the ALJ to take this additional evidence.

¶25 Lenca's pay stubs substantially called into question the accuracy of Parlee's testimony, on which the ALJ had based her findings. Thus, the pay stubs also undermined the ALJ's fundamental findings that Lenca was still making $600 per week and had not suffered a 25 percent reduction in pay when he quit. Accordingly, the Commissioner acted arbitrarily and capriciously by disregarding these facts and circumstances when he refused to order the ALJ to admit Lenca's pay stubs as evidence and to reconsider her decision. We hold, therefore, that the Commissioner abused his discretion in refusing to remand the case to the ALJ to take additional evidence under RCW 50.32.080.[18]

### III. ATTORNEY FEES

¶26 Lenca requests attorney fees and costs under RCW 50.32.160, which provides:

It shall be unlawful for any attorney engaged in any appeal to the courts on behalf of an individual involving the individual's application for initial determination, or claim for waiting period credit, or claim for benefits to charge or receive any fee therein in excess of a reasonable fee to be fixed by the superior court in respect to the services performed in connection with

---

[17] Lenca's employer stated during the hearing, "I don't know who it was garnishing wages, or whatever, but they were taking like 200 of the week out, or something like that." CR at 31. But Lenca's pay stubs do not show any garnishments.

[18] Because our resolution of this issue is dispositive, we do not address Lenca's other arguments that the ALJ violated his right to a fair hearing.

the appeal taken thereto and to be fixed by the supreme court or the court of appeals in the event of appellate review, and *if the decision of the commissioner shall be reversed or modified, such fee and the costs shall be payable out of the unemployment compensation administration fund.* In the allowance of fees the court shall give consideration to the provisions of this title in respect to fees pertaining to proceedings involving an individual's application for initial determination, claim for waiting period credit, or claim for benefits. In other respects the practice in civil cases shall apply.

(Emphasis added.) Because we reverse the Commissioner's decision, Lenca is entitled to attorney fees and costs under this statute.

## CONCLUSION

¶27 We vacate the Commissioner's decision denying Lenca unemployment benefits. We order the Commissioner to remand to the ALJ under RCW 50.32.080 with directions to accept Lenca's pay stubs into evidence, to consider whether Lenca's letters should be taken into evidence, to reconsider her findings of fact and conclusions of law in light of this additional evidence, to reconsider her findings about the true amount of Lenca's pay when he quit, and to reconsider her decision about whether Lenca is entitled to unemployment benefits. We also grant Lenca his attorney fees and costs on appeal under RCW 50.32.160.

VAN DEREN, C.J., and QUINN-BRINTNALL, J., concur.