[No. 56639-9. En Banc. May 10, 1990.]

RICKEY C. LEISCHNER, ET AL, *Respondents,* v. WILLIAM E. ALLDRIDGE, ET AL, *Defendants,* THE UNITED STATES OF AMERICA, *Appellant.*

754

*Gene S. Anderson, United States Attorney; Gary R. Allen, William S. Estabrook,* and *Stuart E. Horwich, Assistant Attorneys of the United States;* and *Shirley D. Peterson, Assistant Attorney General,* for appellant.

*Janet Lim* (of *Petersen, Lycette & Snook, P.S.*), for respondents.

DOLLIVER, J.—The United States of America, through its agency, the Internal Revenue Service (IRS), challenges a superior court determination that a federal tax lien is inferior to a litigant's claim for attorney fees where the source of the funds available for satisfaction of the competing

claims are interpleaded funds resulting from the litigants' action to quiet title.

Plaintiffs brought an action to quiet title to property which they had purchased on March 31, 1980, by a real estate contract from William and Marion Alldridge. The property was purchased subject to a first mortgage executed by the Alldridges, as mortgagors, to the Kitsap County Bank (Bank), as mortgagee, and dated September 8, 1978. The Alldridges were to continue paying the mortgage according to its terms, and upon fulfillment of the contract, the Alldridges agreed to satisfy the mortgage. The proceeds under the real estate contract were assigned by the Alldridges to the Bank on May 15, 1980, for purposes of securing the first mortgage.

In 1982 the Leischners entered into negotiations for the sale of their vendee's interest to a third party and discovered, through a preliminary title report, that numerous judgment liens against the Alldridges had attached to the property subsequent to the execution and recording of the Leischners' real estate contract. These liens sought to attach to the unexecuted portion of the real estate contract represented by the unpaid balance of the contract price. On December 28, 1982, the IRS filed a tax lien against the property to collect unpaid tax assessments of over $38,000 made against the Alldridges.

On April 5, 1983, the Leischners filed a complaint for declaratory relief and to quiet title. On January 25, 1984, the IRS served a tax levy on the Leischners in an attempt to collect the unpaid taxes. On April 13, 1984, the Leischners amended their complaint to include the United States of America, through the IRS.

Pursuant to earlier orders which are not part of this appeal, the Kitsap County Superior Court had determined that the Bank's prior mortgage obligation on the property was superior to the claims by all other parties. The Leischners subsequently paid off the mortgage. A balance of $13,831.27 remained due on the real estate contract. On June 12, 1986, the Leischners paid this remaining balance

into the registry of the Kitsap County Superior Court. On October 15, 1986, the Superior Court issued a memorandum order quieting title to the property in the names of the Leischners. By the same order, the court also decreed that the Leischners were entitled to an award for their reasonable attorney fees and costs incurred in maintaining and pursuing this action.

The Superior Court subsequently determined that no trial was necessary and decided the question of priority on the basis of the affidavits and briefs, without oral argument. On December 23, 1988, the trial court signed a memorandum decision declaring the priority of the Leischners' attorney fees and costs in the sum of $8,731.71 over the tax lien of the IRS, which was $38,377.66. The court ruled that "the efforts of plaintiffs' attorneys did, in fact, create and preserve the fund that is here in issue . . .. Without plaintiffs' actions, it appears, the funds may well have been dissipated by the taxpayer." On March 6, 1989, the trial court entered an order confirming its memorandum decision.

The IRS, the only party to appeal the trial court's decision, sought review before the Court of Appeals. The case was transferred to this court.

The Leischners claim the money, paid into the registry of the court in a quiet title action to pay off the remaining balance on a real estate contract, falls within the "common fund" doctrine from which the contract purchasers' attorney fees should be paid prior to a federal tax lien against the contract vendor. In the alternative, they argue they are entitled to set off the amount of attorney fees they incurred from the money owed the Alldridges pursuant to the real estate contract.

While it is the general rule that attorney fees will be allowed only where provided by statute or contractual obligation, we have recognized limited exceptions to this rule. Among these exceptions is when a successful litigant pursues litigation and creates or preserves a common fund which benefits a group of persons. That party may be

allowed reasonable attorney fees to be paid from the common fund. *Seattle Trust & Sav. Bank v. McCarthy*, 94 Wn.2d 605, 612, 617 P.2d 1023 (1980).

To be eligible for fees under the common fund doctrine a litigant must show that the suit benefits others as well as the litigant itself. *Hsu Ying Li v. Tang*, 87 Wn.2d 796, 799, 557 P.2d 342 (1976). The party seeking an award of attorney fees must also demonstrate that the Legislature has not preempted such an award by statute. If the merits of the litigation fall within a statutory scheme which prohibits the award of attorney fees, or allows such an award under narrow circumstances, a party cannot enlarge those circumstances by reference to the common fund doctrine or other equitable powers of the trial court. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 719, 18 L. Ed. 2d 475, 87 S. Ct. 1404 (1977).

The Leischners claim that, but for the actions taken by them in initiating and maintaining the declaratory action to secure proper application of the funds and to preserve the remaining funds, the real estate proceeds would have been received by the Alldridges and dissipated. Thus, all parties, including the IRS, have benefited from the retention of counsel by the Leischners to pursue this litigation.

The trial court relied upon *United States v. Kamieniecki*, 261 F. Supp. 683 (D.N.H. 1966) to support its finding that the common fund doctrine applied. *Kamieniecki* involved an action filed by the United States against the defendant taxpayer and others for an adjudication that the taxpayer was indebted for unpaid federal income taxes and that the IRS had a valid first lien on a certificate of deposit purchased by taxpayer. *Kamieniecki*, at 685–86. The *Kamieniecki* court found the actions of the attorney, who pursued a tort action on behalf of the taxpayer against a third party in a separate action, resulted in an award which was eventually placed in the registry of the court. The court held the fund would not have existed but for the efforts of Kamieniecki's attorney in the tort action, and awarded the fees paid from the fund prior to satisfying the tax lien,

notwithstanding that those fees were inchoate and subordinate to the federal lien because the amount of the attorney's lien was still undetermined when the federal tax lien was filed. *Kamieniecki,* at 691.

The trial court's reliance on *Kamieniecki* is misplaced. Under the circumstances of that case, the District Court's award of attorney fees to the attorney in the earlier tort suit from the proceeds of the tort suit judgment was in keeping with 26 U.S.C. § 6323(b)(8) which states that a tax lien does not take priority over an attorney's lien where the attorney obtained a judgment or procured a settlement. 26 U.S.C. § 6323(b)(8). The efforts of Kamieniecki's attorney in the earlier suit created a fund by pursuing a tort action and thereby obtaining a judgment in that suit. *Kamieniecki,* at 685. In such a situation, an attorney's lien was proper under 26 U.S.C. § 6323(b)(8).

■ Plaintiffs' argument, accepted by the trial court, that but for their bringing the action to quiet title the funds "may well have been dissipated" by the Alldridges, is pure speculation. Even if true, however, no common fund as articulated by the case law was created. The Leischners' attorneys did not obtain a judgment which benefited the United States. All of the money interpleaded was owed by the Leischners pursuant to their real estate contract with the Alldridges. No common fund was created by the actions of the plaintiffs; the common fund doctrine does not apply.

With reference to the Leischners' argument they are entitled to set off the amount of attorney fees they incurred from the money owed the Alldridges pursuant to the real estate contract, the contract provided that upon seller's election to bring suit to enforce any covenant of the contract the purchaser agrees to pay a reasonable sum in attorney fees, which sum shall be included in any judgment or decree entered. RCW 4.84.330 applies this section to a suit brought by the purchaser as well. Thus, the Leischners' contention is that the government will be unjustly enriched if it is allowed to recover any more than the balance of the

real estate contract owed to the Alldridges minus the amount the Leischners could set off for their attorney fees.

A similar claim was made and rejected in *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 10 L. Ed. 2d 770, 83 S. Ct. 1651 (1963), where the foreclosing mortgagee contended the amount available to satisfy the mortgagor–taxpayer's creditors must be reduced by attorney fees incurred in the foreclosure proceeding which the mortgagor–taxpayer had agreed should be paid prior to any of the other claims. The United States Supreme Court rejected this argument where the amount of such attorney fees was uncertain when the federal tax liens arose. *Pioneer,* at 87.

■ Whatever right the Leischners may have had to set off their attorney fees from the balance of the real estate contract had not yet matured at the time the federal tax lien was perfected. Just because the Leischners' property rights are subject to an unexecuted right of setoff does not allow them to later exercise that right to set off after a federal tax lien has attached. No setoff of attorney fees is allowable.

■ Regardless of plaintiffs' contention as to the common fund doctrine or a setoff, however, it is in any event inapplicable because the IRS was entitled to the funds by virtue of its tax levy and the statutory scheme applicable to the priorities of such liens. 26 U.S.C. §§ 6321 and 6322 constitute a statutory prohibition against the common fund doctrine to the extent that depletion of the common fund would diminish the amount recovered by the government under its prior tax lien. *United States v. Equitable Life Assur. Soc'y of U.S.,* 384 U.S. 323, 16 L. Ed. 2d 593, 86 S. Ct. 1561 (1966); *Millers Mut. Ins. Ass'n v. Wassall,* 738 F.2d 302 (8th Cir. 1984). Section 6321 of the Internal Revenue Code provides for the imposition of a federal tax lien encompassing all property and rights to property, whether real or personal, belonging to a delinquent taxpayer. 26 U.S.C. § 6321. This tax lien arises automatically at the time the taxes are assessed and continues until the underlying

tax liability is satisfied or the statute of limitation intervenes. 26 U.S.C. § 6502(a). Section 6322 of the Code provides that the lien imposed by section 6321 shall arise at the time assessment is made and shall continue until the liability is satisfied or becomes unenforceable due to a lapse of time. 26 U.S.C. § 6322.

The priority of a federal tax lien in relation to other liens is based upon the rule of "first in time is the first in right". *United States v. New Britain*, 347 U.S. 81, 85, 98 L. Ed. 520, 74 S. Ct. 367 (1954). Once the government perfects its lien by duly filing a notice of tax lien with the proper state office, the tax lien will be prior to other security interests which arise after that time. *United States v. Central Bank*, 843 F.2d 1300, 1307 (10th Cir. 1988). Other security interests must be "choate" at the time the notice of tax lien is filed, or the tax lien will be prior. A lien is choate in the federal sense when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. New Britain, supra* at 84.

The above cited statutory scheme makes the IRS tax lien prime to the Leischners' claim for attorney fees. The tax lien was duly perfected on December 28, 1982, the date notice of tax lien was filed with the proper state office. The Leischners did not file their complaint for declaratory relief and to quiet title until April 5, 1983. Furthermore, the Leischners' attorneys' lien did not become choate (the amount of the lien determined) until December 23, 1988, the date on which the Kitsap County Superior Court held the amount of the attorney fees claimed by counsel to be reasonable. Therefore, because there are no statutory exceptions to alter the rule of "first in time is the first in right", and because the Leischners may not create an exception by reference to the common fund doctrine, the United States' tax lien primes the Leischners' claim for attorney fees by 6 years. *See Fleischmann Distilling Corp. v. Maier Brewing Co., supra* at 714. *See also United States v. R.F. Ball Constr. Co.*, 355 U.S. 587, 2 L. Ed. 2d 510, 78 S. Ct. 442 (1958) (Court summarily reversed an award of

interpleader attorney fees where a federal tax lien had previously attached to the fund).

 The IRS was entitled to the funds by virtue of its tax levy. Detailed statutory provisions govern the priority question associated with federal tax liens; the Leischners failed to meet the statutory exceptions that allow attorney fees. 26 U.S.C. § 6323. To expand these statutory provisions beyond what is evidenced in the plain writing and supporting case law would circumvent legislative intent. *See Fleischmann Distilling Corp.,* at 719.

The trial court is reversed. Plaintiffs are not entitled to attorney fees from the interpleaded funds either at trial or on appeal.

CALLOW, C.J., and UTTER, BRACHTENBACH, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.