This opinion was filed for record

at 8 a.m. on Oct 4, 2018

Susan L. Carl

SUSAN L. CARLSON
SUPREME COURT CLERK

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 0 4 2018
Fairhurst, CJ
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CHRISTOPHER BELLING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 95097-1 |
| | ) | |
| WASHINGTON STATE | ) | En Banc |
| EMPLOYMENT SECURITY | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | Filed OCT 0 4 2018 |

GONZÁLEZ, J.—Under some circumstances, when a person is forced to litigate to recover an award, others who seek to share in that award must also share in the attorney fees. This is an exception to the American rule that parties generally pay for only their own attorneys. Under Washington statutes, when a person receives both unemployment and workers' compensation benefits for the same period of time, the unemployment benefits must be repaid. RCW 50.20.190. There is an exception, however,

for situations when "equity and good conscience" makes repayment unfair under the circumstances. RCW 50.20.190(2).

In this case, Christopher Belling was forced to litigate to receive workers' compensation. Effectively, the Employment Security Department seeks to share in that workers' compensation award. We hold that the department must consider whether equity and good conscience requires it to share in Belling's attorney fees as part of its larger consideration of whether it would be fair to partially waive reimbursement of overpaid benefits under RCW 50.20.190(2). Given the case presented to the department, we cannot say it erred in declining to reduce reimbursement to account for Belling's attorney fees and costs. Accordingly, we affirm.

## FACTS

Belling worked for Malcolm Drilling Company. He was injured on the job in 2005. He successfully applied for workers' compensation and received regular time-loss benefits until March 2011. At that point, the Department of Labor and Industries concluded that Belling could go back to work, paid him approximately $9,271.80 for a permanent partial disability, and stopped making regular time-loss payments.

Belling appealed, hiring a lawyer who charged him a 30 percent contingency fee. He also successfully applied for unemployment benefits.

2

The next year, the Board of Industrial Insurance Appeals reinstated Belling's workers' compensation benefits and awarded him back benefits. Part of the award represented workers' compensation benefits for days Belling was also receiving unemployment benefits. Not long after Belling's workers' compensation appeal was resolved, the Employment Security Department notified him that due to his victory on appeal, he had improperly received both workers' compensation and unemployment benefits for the same period of time. The department asserted that "[t]he overpayment cannot be waived as you are at fault." Clerk's Papers (CP) at 90. It demanded reimbursement of $22,924, which is the amount Belling received in unemployment benefits on days he was awarded workers' compensation.

Belling asked the department to waive a portion of reimbursement, arguing that under the "basic principles of *Mahler v. Szucs*, 135 Wn.2d 398[, 31 P.3d 1164] (1998)[,] . . . Employment Security should be willing to pay its share of the legal expenses" necessary to obtain the workers' compensation award. *Id*. at 127. The dispute went before an administrative law judge (ALJ). The ALJ concluded Belling was not at fault[1] but that equity and good conscience did not require waiver of any part of the reimbursement. The commissioner of Employment Security adopted the

---

[1] Like the ALJ, we find no evidence that Belling was at fault for the duplicative payments.

3

ALJ's initial order, making it the decision of the commissioner. Belling appealed to Superior Court, which largely affirmed. Both sides appealed. In a split, unpublished opinion, the Court of Appeals reinstated the commissioner's decision requiring complete reimbursement. *Belling v. Emp't Sec. Dep't*, No. 34066-0-III (Wash. Ct. App. Sept. 12, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/340660_unp.pdf. We granted review.

ANALYSIS

FEE SHARING

We must first decide whether fee sharing under the common fund doctrine generally applies when the department seeks reimbursement under chapter 50.32 RCW. The parties agree that this is a question of law we review de novo. Additionally, our review is guided by the legislative direction that the unemployment act "shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum." RCW 50.01.010.

Under the American rule, parties do not share attorney fees unless an exception grounded in contract, law, or equity applies. *Winters v. State Farm Mut. Auto. Ins. Co.*, 144 Wn.2d 869, 877, 31 P.3d 1164 (2001) (citing *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70-71, 847 P.2d 440 (1993)).

4

One equitable exception to the American rule is the common fund doctrine. Under this doctrine, "a court is authorized to award attorney fees only when a litigant preserves or creates a common fund for the benefit of others as well as themselves." *City of Sequim v. Malkasian,* 157 Wn.2d 251, 271, 138 P.3d 943 (2006) (citing *Bowles,* 121 Wn.2d at 70-71).

The common fund doctrine does not apply to every situation where attorney fees may be accrued. "If the merits of the litigation fall within a statutory scheme which prohibits the award of attorney fees, or allows such an award under narrow circumstances, a party cannot enlarge those circumstances by reference to the common fund doctrine or other equitable powers of the trial court." *Leischner v. Alldridge,* 114 Wn.2d 753, 757, 790 P.2d 1234 (1990) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 719, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967)). Both the unemployment compensation act and the Industrial Insurance Act contain attorney fees provisions that do not grant fees to claimants in Belling's position. RCW 50.32.160,[2] .100;[3] RCW 51.52.120,[4] .130, .150.

---

[2] RCW 50.32.160 grants a reasonable fee to claimants who prevail in court "payable out of the unemployment compensation administration fund." RCW 50.16.050 largely limits the use of this fund to employment security's administrative costs. It is funded separately from the unemployment fund, mostly by federal dollars and state general funds. *See* 42 U.S.C. § 502(a); LAWS OF 2018, ch. 299, § 222(2).

[3] RCW 50.32.100 provides that all administrative adjudicative costs except for the claimant's attorney fees "shall be paid out of the unemployment compensation administration fund." This fund is partially financed with federal monies and is subject to significant restrictions. RCW 50.16.050; 42 U.S.C. §§ 501-504.

[4] RCW 51.52.120 provides successful claimants with prevailing party attorney fees in industrial insurance cases appealed to court.

We have already specifically found the common fund doctrine cannot be used to expand the attorney fee provisions in the workers' compensation and unemployment security statutes. *See Rhoad v. McLean Trucking Co.,* 102 Wn.2d 422, 426, 686 P.2d 483 (1984); *Penn. Life Ins. Co. v. Dep't of Emp't Sec.,* 97 Wn.2d 412, 417-18, 645 P.2d 693 (1982). In *Pennsylvania Life,* an employer challenged Employment Security's determination that an employee was eligible for benefits. 97 Wn.2d at 413. The employer established that the employee had been terminated for misconduct and was thus ineligible. *Id.* The trial judge awarded the employer attorney fees under a statute that gave prevailing claimants attorney fees under limited circumstances. *Id.* at 413-14 (citing former RCW 50.32.160 (1971)). The employer argued it was entitled to fees under the equitable common fund doctrine since it had protected the unemployment fund from a nonmeritorious claim. *Id.* at 414. This court disagreed, concluding that the unemployment compensation act

> makes no provision for the fixing or awarding of attorney fees to employers, but protects only the employee and his beneficiaries. So the Legislature has in the case of both the Industrial Insurance Act and the unemployment compensation act amended the provisions for attorney fees to make it clear that they shall be awarded only to claimants under the statutes.

*Id.* at 416 (citation omitted) (citing *Harbor Plywood Corp. v. Dep't of Labor & Indus.,* 48 Wn.2d 553, 295 P.2d 310 (1956)). *Pennsylvania Life* thus

declined to extend the common fund doctrine to a prevailing employer's appeal because it would have been inconsistent with the attorney fee system established by the act. *See also Rhoad*, 102 Wn.2d at 426 (applying similar principles under the former workers' compensation arena).

Since these cases, there has been considerable development of our common fund doctrine jurisprudence in the context of automobile insurance policies. *See Matsyuk v. State Farm Fire & Cas. Co.*, 173 Wn.2d 643, 649-650, 272 P.3d 802 (2012) (citing *Hamm v. State Farm Mut. Auto. Ins. Co.*, 151 Wn.2d 303, 88 P.3d 395 (2004); *Winters*, 144 Wn.2d 869). These cases establish that an automobile insurer that has paid first party benefits is required to pay a pro rata share of attorney fees anytime it seeks reimbursement out of a judgment or settlement with a tortfeasor. *Id.* Belling contends that these cases should be applied here.

While this is a question of first impression in this court, it is not a question of first impression in Washington appellate courts. In 2005, our Court of Appeals declined to apply the common fund doctrine to limit Employment Security's reimbursement of unemployment benefits from a workers' compensation award. *See Delagrave v. Emp't Sec. Dep't*, 127 Wn. App. 596, 605, 111 P.3d 879 (2005) (citing *Mahler*, 135 Wn.2d at 426-27, 436). The court concluded that if the legislature had wanted the department

to partially waive unemployment reimbursement in such situations, it would have said so. The court noted that the statutory schema already allows for attorney fees in some circumstances:

> RCW 50.32.160 provides for payment of attorney fees and costs out of the unemployment compensation administration fund only if a commissioner's decision is reversed. A provision for attorney fees for recovery of overpayment is notably absent from this provision as well as from the overpayment provisions of the statutes. See RCW 50.20.085, .190. If the legislature had intended attorney fees to be available in overlapping benefits scenarios like the one here, the logical place to include such a provision would be within these three statutes.

*Id.* RCW 50.32.160 and RCW 50.20.085 have not been amended since *Delagrave* was published in 2005, which suggests the legislature did not take issue with the opinion.[5] The *Delagrave* court also relied on our case law that had previously held the common fund doctrine cannot be used to expand on statutory attorney fees in the employee benefits arena. *Id.* at 606 (quoting *Leischner*, 114 Wn.2d at 757). *Delagrave* noted that the statutory scheme *does* permit waiver or partial waiver of reimbursement for reasons of equity and good conscience. *Id.* (quoting RCW 50.20.190(2)). The court

---

[5] The third statute cited (and the one most relevant here), RCW 50.20.190, has been updated several times, but not in any way that is relevant to attorney fee offsets. *See* LAWS OF 2013, ch. 189, § 4; LAWS OF 2011, ch. 301, § 17; LAWS OF 2007, ch. 327, § 1; LAWS OF 2006, ch. 13, § 21.

remanded for consideration whether equity and good conscience required a partial waiver of reimbursement. *Id.* at 613.

Belling does not offer a compelling argument for why we should overrule *Delagrave* and extend the common fund doctrine given the existing attorney fee provisions of Title 50 RCW and given that RCW 50.20.190(2) already allows claimants to argue equity and good conscience, in their cases, requires waiver. We decline to do so.

## EQUITY AND GOOD CONSCIENCE

Next, we must decide whether the department erred in not waiving a portion of reimbursement under RCW 50.20.190(2)'s equity and good conscience standard. We stress that Belling does not ask this court to find reimbursement should be waived because it would be a hardship. We are mindful that there are facts in the record, mostly elicited by the ALJ, that suggest it would be. But at oral argument, Belling repeatedly stressed that he was not arguing that based on his individual situation the department should have to share attorney fees. Instead, he was arguing that the department should have to share attorney fees regardless of financial hardship. In essence, he argued for a presumption of fee sharing. A different outcome might occur in a case where the claimant brings an argument that fee sharing is equitable and that reimbursement would be a

hardship. But that case is not before us. Instead, we are asked decide between Belling's theory that fee sharing is presumptively required or the department's theory that fee sharing is always impermissible. We reject both of their positions.

We assume without deciding that the arbitrary and capricious standard applies.[6] "An agency acts in an arbitrary and capricious manner if its actions are willful, unreasoning, and in disregard of facts and circumstances." *Lenca v. Emp't Sec. Dep't*, 148 Wn. App. 565, 575, 200 P.3d 281 (2009) (citing *Wash. Waste Sys., Inc. v. Clark County*, 115 Wn.2d 74, 81, 794 P.2d 508 (1990)). The arbitrary and capricious standard of review is often used for review of agency discretionary decisions. *Id.*; RCW 34.05.570(3)(i).

Since *Delagrave* was announced, the department has taken steps to analyze whether it would be "against equity and good conscience" to require reimbursement out of a claimant's successful workers' compensation appeal in any given case. First, the commissioner issued an opinion it designated as precedent, *In re Peltier*, that specifically considered the impact of attorney fees accrued in order to secure an award that included partially duplicative

---

[6] We note in passing that the only case to address the issue "upheld [the repayment order] since there is no showing of an abuse of discretion by the Commissioner in declining to waive the overpayment" without analysis. *Berland v. Emp't Sec. Dep't*, 52 Wn. App. 401, 410, 760 P.2d 959 (1988). "Abuse of discretion" is not an Administrative Procedure Act standard of review of adjudicative decisions. Ch. 34.05 RCW. We leave for another day, upon proper argument, whether abuse of discretion is the appropriate standard.

benefits. No. 04-2006-22057 (Wash. Emp't Sec. Dep't Comm'r Dec. No. 910, 2d Series Feb. 16, 2007), 2007 WL 5172355.[7] Peltier received about $10,000 in unemployment benefits while her workers' compensation claim was on appeal. *Id.* at *1. Peltier prevailed on her appeal and was, coincidentally, awarded about $10,000. *Id.* After paying her attorney, she was left with about $7,000. *Id.* The commissioner partially waived reimbursement so that Peltier was not left in a worse position after her appeal. *Id.* at *1-2. In essence, the commissioner discounted Peltier's workers' compensation award by the amount of her attorney fees before seeking reimbursement from that award.

Second, the commissioner revised the relevant administrative rules to include a nonexclusive list of considerations for determining whether it would violate equity and good conscience to require reimbursement. Wash. St. Reg. 08-21-056 (effective Nov. 9, 2008); WAC 192-220-030. Currently, that administrative rule most relevantly provides:

> **What does equity and good conscience mean in regard to overpayment waiver decisions?—RCW 50.20.190(2).** (1) "Equity and good conscience" means fairness as applied to a given set of circumstances.

---

[7] RCW 50.32.095 gives the commissioner authority to designate some opinions as precedents and publish them. These precedents are treated as persuasive authority in article IV courts. *Martini v. Emp't Sec. Dep't*, 98 Wn. App. 791, 795 & n.9, 990 P.2d 981 (2000) (citing Ronald M. Levin, *Identifying Questions of Law in Administrative Law*, 74 GEO. L.J. 1, 56 (1985)); WASH. CONST. art. IV.

(2) It will be against equity and good conscience to deny waiver when repayment of the overpayment would deprive you of income required to provide for basic necessities including food, shelter, medicine, utilities, and related expenses. . . .

(3) The department may also consider, but is not limited to, the following factors in determining whether waiver should be granted for reasons of equity and good conscience . . . .

WAC 192-220-030.[8]

Given Belling's arguments, the ALJ applied the *Peltier* calculation without also meaningfully considering hardship.[9] Under the *Peltier*

---

[8] The rule continues:

    (a) Your general health, including disability, competency, and mental or physical impairment;
    (b) Your education level, including literacy;
    (c) Whether you are currently employed and your history of unemployment;
    (d) Your future earnings potential based on your occupation, skills, and the local labor market;
    (e) Your marital status and number of dependents, including whether other household members are employed;
    (f) Whether an error by department staff contributed to the overpayment;
    (g) Whether you refused or were ineligible for other government benefits because you received unemployment benefits; and
    (h) Other factors indicating that repayment of the full amount would cause you undue economic, physical, or mental hardship.
    (4) When determining whether a waiver of benefit overpayments may be granted based on equity and good conscience, the department must consider whether the employer or employer's agent failed to respond timely or adequately without good cause to the department's written request for claim information. This subsection does not apply to negotiated settlements.
    (5) The decision to grant or deny waiver will be based on the totality of circumstances rather than the presence of a single factor listed in subsections (2), (3), and (4).

[9] We note that the ALJ's decision does suggest a lack of hardship in several findings. For example, the ALJ's decision notes that Belling owns three vehicles, seemingly to support a conclusion that reimbursement would not be a hardship. Given that one of the vehicles lacked an engine, one was 50 years old, and the newest was 17 years old, we are highly skeptical that ownership suggests reimbursement would not be a hardship. The opinion

calculation, the ALJ started with the $48,251.19 Belling was awarded, discounted the amount by the $19,730.57 Belling paid in fees and costs, and determined he received $28,850.62. Since that amount was more than the $22,924.00 Belling received in unemployment benefits, the department declined to waive any portion of reimbursement. We stress that the decision to waive reimbursement under the "equity and good conscience" provision of RCW 50.20.190 must be based on the totality of the circumstances presented by the claimant. Each case must stand or fall on its own merits. But discounted for attorney fees, Belling still recovered more in workers' compensation than he was required to reimburse in unemployment benefits.[10] Given Belling's theory of the case that he is entitled to an offset, regardless of hardship, we cannot say that the department's decision was "willful, unreasoning, and in disregard of facts and circumstances." *Lenca*, 148 Wn. App. at 575 (citing *Wash. Waste Sys., Inc.*, 115 Wn.2d at 81). We accordingly affirm. Belling's request for attorney fees is denied.

---

also notes that Belling has no medical debt in collections. There is, however, suggestions in the record that Belling had medical debt. The fact none was in collections at the time of the hearing is not helpful in determining whether reimbursement would be a hardship. Most disturbingly, Belling testified that repaying the full amount the department requested would leave him "$3,645.18 in the hole." CP at 56-57.

[10] Belling's appeal also resulted in permanent time-loss payments, a significant benefit we by no means mean to discount.

CONCLUSION

We hold that the department must meaningfully consider whether equity and good conscience requires fee sharing in any case where the claimant presents the argument. This consideration must be part of the department's overall consideration whether it is fair under the circumstances to require reimbursement. In this case, given the facts and argument presented to the department, we cannot say it erred in declining to reduce reimbursement to account for attorney fees and costs. Accordingly, we affirm.

Gonzáles, J.

WE CONCUR:

Fairhurst, CJ.

Madsen, J.

González, McCloud, J.

Jm, J.

No. 95097-1

STEPHENS, J. (dissenting)—At the heart of this case is whether notions of "equity and good conscience" relevant to the Employment Security Department's (Department) decision to waive overpayment of unemployment benefits under RCW 50.20.190 require consideration of the legal expenses a claimant incurs in reimbursing the Department. While the majority lauds a liberal interpretation of RCW 50.20.190, it applies the provision too restrictively, rejecting Christopher Belling's waiver claim because he "still recovered more in workers' compensation than he was required to reimburse in unemployment benefits." Majority at 13. I respectfully dissent. I would hold that "equity and good conscience" demands a more searching inquiry. Apart from considering individual financial hardship, the Department must consider whether basic fairness requires a partial waiver to account

for the legal expenses a claimant incurs to recover funds that reimburse unemployment benefits. Such consideration does not involve any expansion of the common fund doctrine, but rather a straightforward application of RCW 50.20.190 in "equity and good conscience." I would reverse the Court of Appeals and remand for further consideration of Belling's claim for partial waiver of reimbursement.

## ANALYSIS

The majority appropriately recognizes that RCW 50.20.190 must be liberally construed, with the purpose of reducing the suffering caused by involuntary unemployment. Majority at 4. It embraces the broad interpretation of "equity and good conscience" adopted by the Court of Appeals in *Delagrave v. Employment Security Department*, 127 Wn. App. 596, 612, 111 P.3d 879 (2005), and followed in the department commissioner's opinion *In re Peltier*, No. 04-2006-22057 (Wash. Emp't Sec. Dep't Comm'r Dec. No. 910 2d Series Feb. 16, 2007), 2007 WL 5172355. Unfortunately, the majority fails to appreciate that Belling's waiver claim is entirely consistent with the claims in *Delagrave* and *Peltier*. Belling simply seeks to have the Department consider a partial waiver of reimbursement to account for the legal fees he incurred in recovering the workers' compensation benefits that gave rise to the Department's reimbursement rights. *Compare* Suppl. Br. of Appellant at 15 ("Under the totality of the circumstances it is consistent with equity and good

conscience to grant Mr. Belling's partial waiver request, equivalent to [the Department's] pro rata share of attorney fees and costs."), *with Delagrave*, 127 Wn. App. at 602 ("'Appellant argues that he should be allowed a pro rated reduction for attorney's fees.'").

Accepting Belling's argument requires only that we give effect to the "equity and good conscience" provision in RCW 50.20.190. There is no need to "overrule" precedent or extend the common fund doctrine.

### A. Notions of "Equity and Good Conscience" Do Not Limit the Commissioner to a Given Set of Circumstances—"Equity and Good Conscience" Simply Means Fairness

The commissioner of the Department may waive overpayment reimbursement when the claimant is fault free and reimbursement "would be against equity and good conscience." RCW 50.20.190(2). The majority stresses that the decision to waive reimbursement under the equity and good conscience provision must be based on the totality of the circumstances presented by the claimant. Majority at 13. It recognizes two guidelines that assist the commissioner in determining waiver decisions. The first is a series of factors set forth in the Washington Administrative Code (WAC) that delineates specific considerations the commissioner must take into account, such as the claimant's ability to provide for basic necessities. WAC 192-220-030(2). The second reflects the calculation performed in *Peltier* to determine if

the amount received by the claimant, after attorney fees are deducted, is greater than the amount owed to the Department. 2007 WL 5172355. Reviewing only these guidelines, the majority concludes that the commissioner appropriately denied Belling's request for attorney fees. Majority at 10, 13.

While the standards the majority discusses provide important guidance to the commissioner in determining overpayment waivers, they are not exclusive. "An agency may not promulgate a rule that amends or changes a legislative enactment." *Edelman v. State ex rel. Pub. Disclosure Comm'n*, 152 Wn.2d 584, 591, 99 P.3d 386 (2004) (citing *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*, 140 Wn.2d 615, 634, 999 P.2d 602 (2000)). By limiting consideration of overpayment waiver decisions to the factors contained in the WAC and the calculations contained in *Peltier*, the commissioner placed limitations on "equity and good conscience" under the statute where no such limitations exist. *Delagrave*, 127 Wn. App. at 611. The better view is that taken by the Court of Appeals in *Delagrave*, that "[e]quity and good conscience means fairness." *Id.* at 613. In accordance with RCW 50.20.190(2), the commissioner must consider the totality of circumstances to determine whether, as a matter of basic fairness, the Department ought to waive full reimbursement of overpaid unemployment benefits.

B. *"Equity and Good Conscience" Mandates Consideration of All Relevant Circumstances, Including the Claimant's Legal Expenses Incurred in Reimbursing the Department*

After determining that "equity and good conscience" require the commissioner to consider whether an overpayment waiver is fundamentally fair, the next step in the analysis is to determine what circumstances must be examined to make this determination. In the case before us, I believe there are two areas of concern. The first, recognized by the majority, involves the commissioner's failure to consider a variety of circumstances in Belling's life affecting his current and future financial well-being. The second, rejected by the majority, involves the principle of equity described as the common fund doctrine, which supports pro rata sharing of attorney fees and costs among those who benefit from a recovery obtained in litigation. *Leischner v. Alldridge*, 114 Wn.2d 753, 756-57, 790 P.2d 1234 (1990).

Recall the majority's assumed standard of review—"[a]n agency acts in an arbitrary and capricious manner if its actions are willful, unreasoning, and in disregard of facts and circumstances." *Lenca v. Emp't Sec. Dep't*, 148 Wn. App. 565, 575, 200 P.3d 281 (2009) (citing *Wash. Waste Sys., Inc. v. Clark County*, 115 Wn.2d 74, 81, 794 P.2d 508 (1990)). I would hold that the commissioner willfully and unreasonably disregarded the following facts and circumstances: (1) that the record was not well developed with regard to Belling's expenses, (2) that Belling

was deemed disabled by two independent government agencies and had debt that was not in collections, as well as evidence of future financial hardship, and (3) that Belling had no other option than litigation to obtain reinstatement of his workers' compensation benefits.

In his hearing before an administrative law judge (ALJ), Belling was questioned in detail regarding his monthly expenses and outstanding debt. Clerk's Papers (CP) at 61-67. Review of the transcript shows that Belling was unaware of the exact amount of his expenses or that his responses were simply inaudible. *Id.* Even more disturbing, when the ALJ specifically asked about outstanding medical bills, Belling's response was inaudible. CP at 63. While Belling acknowledged that he had no medical debt in collections, CP at 64, this does not mean he had no outstanding medical bills. Without a complete and accurate picture of Belling's financial situation, the commissioner could not meet the requirements of RCW 50.20.190(2) to render a decision based on "equity and good conscience."

In addition to not having a clear picture regarding Belling's financial situation, the commissioner does not appear to have considered that Belling was determined to be disabled by two government agencies, compounding his vulnerability to future financial hardship. In 2011, the Department of Labor and Industries concluded that Belling had a permanent partial disability for which he received a one-time payment

of $9,271.80. Majority at 2. In addition, Belling also receives Social Security disability payments. CP at 61-62. Payments for a disability are made to an individual in order to compensate for a decreased ability to obtain future earnings. *McIndoe v. Dep't of Labor & Indus.*, 144 Wn.2d 252, 260, 26 P.3d 903 (2001). Yet, in Belling's case, there are no findings of fact with regard to his diminished ability to earn future income or the effect such diminished ability will have on his outstanding debts. *See* CP at 203-06. The only finding of fact[1] regarding Belling's financial situation alludes to the fact that he could potentially receive another disability payment in the future and concludes by highlighting that he has no debt in collections, "'eats out a lot,'" and owns three vehicles.[2] CP at 204. Again, this analysis is highly deficient with regard to the fundamental fairness demanded by the legislature.

Apart from circumstances indicating Belling's financial hardship, notions of equity and fundamental fairness required the commissioner to consider the fact that

---

[1] "The claimant continues to receive $1,486 twice each month in time loss benefits from L&I. The claimant could at some point in the future receive another Permanent partial Disability payout. The claimant also receives $1,700 per month in Social Security Disability Benefits. The claimant pays $600 per month in rent. He is responsible for no minor children. He 'eats out a lot,' and has no set grocery budget. The claimant has no debt in collections, and owns three vehicles. He pays $280 per week for his cell phone service." CP at 204.

[2] I agree with the majority that the fact Belling owns three vehicles was not evidence indicating his wealth, given the status of those vehicles. Majority at 12 n.9.

Belling was required to litigate in order to reinstate his workers' compensation benefits. When his workers' compensation benefits were terminated, Belling had two options. He could do nothing and continue to receive unemployment payments, or, he could appeal the decision and pursue litigation. The fact that the need for litigation was created by an error of a state agency in the first place should weigh heavily in favor of Belling receiving a partial waiver to account for the legal expenses he incurred in pursuing this litigation. While I would not hold that a waiver is always required in instances where an individual must negotiate benefits between two state agencies, at a minimum, such a fact merits consideration by the commissioner in reaching the ultimate waiver decision.

In sum, the large number of gaps in the record regarding Belling's financial situation, his reduced capacity for future earnings, and the fact that he was forced to litigate in order to obtain reinstatement of his workers' compensation benefits are all factors the commissioner should have considered in the totality of the circumstances. Without such consideration, it is impossible to conclude that the commissioner's decision upholds the statutory mandate of ensuring that reimbursement does not offend "equity and good conscience." I would remand with instructions that the Department review its waiver decision to take into account the totality of Belling's circumstances discussed above.

*C. Requiring Consideration of a Claimant's Legal Expenses in "Equity and Good Conscience" Does Not Require Expanding the Common Fund Doctrine*

While the majority opinion leads off with a discussion of the common fund doctrine, I do not believe this case requires us to expand the doctrine. It is true that Belling has advocated for applying the common fund doctrine here, building on Judge Fearing's concurring opinion below. Pet. for Review at 9-12; Suppl. Br. of Appellant at 7. But that is not the sum total of his argument. As did the claimant in *Delagrave*, Belling relies squarely on notions of equity and good conscience to argue that the commissioner must consider whether partial waiver is appropriate to account for the legal expenses he incurred in reimbursing the Department. *See* Pet. for Review at 16; Suppl. Br. of Appellant at 15; *see also Delagrave*, 127 Wn. App. at 609 (finding claimant "made a colorable argument for a waiver under the statute" by seeking equitable pro rata fee sharing, despite his failure to identify RCW 50.20.190). Indeed, Belling makes the statutory argument more clearly than did the claimant in *Delagrave* because he expressly relies on the "equity and good conscience" provision of RCW 50.20.190 and criticizes the commissioner for failing to consider the totality of circumstances under the statute. *See* Pet. for Review at 15-16; Suppl. Br. of Appellant at 15.

Following the liberal interpretation of RCW 50.20.190 embraced by the Court of Appeals in *Delagrave*, we should evaluate Belling's equitable argument on its

merits. Belling is correct that RCW 50.20.190 does not limit considerations of "equity and good conscience" to circumstances of financial hardship or when the claimant's recovery, after attorney fees and costs, is less than the Department's reimbursement amount. Instead, the statute mandates that the commissioner consider the totality of circumstances, which naturally includes whether it is fair to saddle a claimant with the full burden of legal expenses incurred in recovering workers' compensation benefits, while the Department receives its full reimbursement of unemployment benefits.

The majority deems it dispositive that Belling still received some recovery after reimbursing the Department, but it does not explain why some recovery is all that fairness requires. Would its conclusion be the same if a claimant netted $100, $50, or $1? Consistent with *Delagrave* and *Peltier*, notions of "equity and good conscience" require consideration of the legal expenses incurred by a claimant in reimbursing the Department with a view toward basic fairness. There is no support for the majority's decision to arbitrarily limit consideration to "zero sum" scenarios. While the Department's commissioner may not always conclude that partial waiver is appropriate to account for legal expenses, RCW 50.20.190 requires that the argument be considered on its own merits—not solely when the claimant is otherwise facing financial hardship or no recovery.

Accepting this argument does not take the court down the path of expanding the common fund doctrine. The majority reads too much into *Rhoad v. McLean Trucking Co.*, 102 Wn.2d 422, 686 P.2d 483 (1984) and *Pennsylvania Life Insurance Co. v. Department of Employment Security*, 97 Wn.2d 412, 645 P.2d 693 (1982). Majority at 6. In both of these cases, this court specifically explained that the governing statutes limited the right to attorney fees and the court would not act in equity to grant attorney fees where the statute was silent. *Penn. Life*, 97 Wn.2d at 417; *Rhoad*, 102 Wn.2d at 427. In contrast, this case asks the court to apply RCW 50.20.190(2)'s equity and good conscience standard to determine whether the Department must consider a partial waiver to account for attorney fees that benefit both the claimant and the Department. Majority at 9. Because the statute is not silent but instead expressly incorporates "equity and good conscience" as the governing standard, this court naturally looks to recognized equitable principles. As the Court of Appeals correctly stated in *Delagrave*, "It is clear that equity and good conscience means, quite simply, fairness." 127 Wn. App. at 612.

As a direct result of Belling's efforts, the Department was able to demand reimbursement of unemployment benefits paid to Belling. Were it not for Belling's workers' compensation appeal, no such reimbursement would have been available. In these circumstances, notions of fundamental fairness mandate that the

commissioner take into account Belling's legal expenses resulting from the litigation and consider whether fairness demands that these expenses be shared by the Department.

For the reasons detailed above, I would hold that the "equity and good conscience" standard of RCW 50.20.190(2) obligates the commissioner to consider a claimant's legal expenses incurred in reimbursing the Department when determining whether to grant a waiver of overpayment, regardless of whether the claimant otherwise faces financial hardship or is left with no recovery.

## CONCLUSION

"Equity and good conscience" means fairness. While the factors listed in the administrative guidelines are useful, they are not dispositive. The commissioner failed to take into account relevant circumstances in Belling's case, including the legal expenses he incurred in reimbursing the Department. I would reverse the Court of Appeals and remand for the Department to review its waiver decision under RCW 50.20.190 in accordance with the totality of the circumstances and fundamental fairness.