González, J.
¶ 1 Under some circumstances, when a person is forced to litigate to recover an award, others who seek to share in that award must also share in the attorney fees. This is an exception to the American rule that parties generally pay for only their own attorneys. Under Washington statutes, when a person receives both unemployment and workers' compensation benefits for the same period of time, the unemployment benefits must be repaid. RCW 50.20.190. There is an exception, however, for situations when "equity and good conscience" makes repayment unfair under the circumstances. RCW 50.20.190(2).
¶ 2 In this case, Christopher Belling was forced to litigate to receive workers' compensation. Effectively, the Employment Security Department seeks to share in that workers' compensation award. We hold that the department must consider whether equity and good conscience requires it to share in Belling's attorney fees as part of its larger consideration of whether it would be fair to partially waive reimbursement of overpaid benefits under RCW 50.20.190(2). Given the case presented to the department, we cannot say it erred in declining to reduce reimbursement to account for Belling's attorney fees and costs. Accordingly, we affirm.
FACTS
¶ 3 Belling worked for Malcolm Drilling Company. He was injured on the job in 2005.
*613 He successfully applied for workers' compensation and received regular time-loss benefits until March 2011. At that point, the Department of Labor and Industries concluded that Belling could go back to work, paid him approximately $9,271.80 for a permanent partial disability, and stopped making regular time-loss payments.
¶ 4 Belling appealed, hiring a lawyer who charged him a 30 percent contingency fee. He also successfully applied for unemployment benefits. The next year, the Board of Industrial Insurance Appeals reinstated Belling's workers' compensation benefits and awarded him back benefits. Part of the award represented workers' compensation benefits for days Belling was also receiving unemployment benefits. Not long after Belling's workers' compensation appeal was resolved, the Employment Security Department notified him that due to his victory on appeal, he had improperly received both workers' compensation and unemployment benefits for the same period of time. The department asserted that "[t]he overpayment cannot be waived as you are at fault." Clerk's Papers (CP) at 90. It demanded reimbursement of $22,924, which is the amount Belling received in unemployment benefits on days he was awarded workers' compensation.
¶ 5 Belling asked the department to waive a portion of reimbursement, arguing that under the "basic principles of Mahler v. Szucs, 135 Wn.2d 398[, 957 P.2d 632] (1998) [,] ... Employment Security should be willing to pay its share of the legal expenses" necessary to obtain the workers' compensation award. Id. at 127. The dispute went before an administrative law judge (ALJ). The ALJ concluded Belling was not at fault[1] but that equity and good conscience did not require waiver of any part of the reimbursement. The commissioner of Employment Security adopted the ALJ's initial order, making it the decision of the commissioner. Belling appealed to Superior Court, which largely affirmed. Both sides appealed. In a split, unpublished opinion, the Court of Appeals reinstated the commissioner's decision requiring complete reimbursement. Belling v. Emp't Sec. Dep't, No. 34066-0-III, 2017 WL 4012946 (Wash. Ct. App. Sept. 12, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/340660_unp.pdf. We granted review.
ANALYSIS
FEE SHARING
¶ 6 We must first decide whether fee sharing under the common fund doctrine generally applies when the department seeks reimbursement under chapter 50.32 RCW. The parties agree that this is a question of law we review de novo. Additionally, our review is guided by the legislative direction that the unemployment act "shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum." RCW 50.01.010.
¶ 7 Under the American rule, parties do not share attorney fees unless an exception grounded in contract, law, or equity applies. Winters v. State Farm Mut. Auto. Ins. Co., 144 Wash.2d 869, 877, 31 P.3d 1164 (2001) (citing Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 70-71, 847 P.2d 440 (1993) ). One equitable exception to the American rule is the common fund doctrine. Under this doctrine, "a court is authorized to award attorney fees only when a litigant preserves or creates a common fund for the benefit of others as well as themselves." City of Sequim v. Malkasian, 157 Wash.2d 251, 271, 138 P.3d 943 (2006) (citing Bowles, 121 Wash.2d at 70-71, 847 P.2d 440 ).
¶ 8 The common fund doctrine does not apply to every situation where attorney fees may be accrued. "If the merits of the litigation fall within a statutory scheme which prohibits the award of attorney fees, or allows such an award under narrow circumstances, a party cannot enlarge those circumstances by reference to the common fund doctrine or other equitable powers of the trial court." Leischner v. Alldridge, 114 Wash.2d 753, 757, 790 P.2d 1234 (1990) (citing Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 719, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) ). Both the unemployment compensation act and the Industrial *614 Insurance Act contain attorney fees provisions that do not grant fees to claimants in Belling's position. RCW 50.32.160,[2] .100;[3] RCW 51.52.120,[4] .130, .150.
¶ 9 We have already specifically found the common fund doctrine cannot be used to expand the attorney fee provisions in the workers' compensation and unemployment security statutes. See Rhoad v. McLean Trucking Co., 102 Wash.2d 422, 426, 686 P.2d 483 (1984) ; Penn. Life Ins. Co. v. Dep't of Emp't Sec., 97 Wash.2d 412, 417-18, 645 P.2d 693 (1982). In PennsylvaniaLife , an employer challenged Employment Security's determination that an employee was eligible for benefits. 97 Wash.2d at 413, 645 P.2d 693. The employer established that the employee had been terminated for misconduct and was thus ineligible. Id. The trial judge awarded the employer attorney fees under a statute that gave prevailing claimants attorney fees under limited circumstances. Id. at 413-14, 645 P.2d 693 (citing former RCW 50.32.160 (1971) ). The employer argued it was entitled to fees under the equitable common fund doctrine since it had protected the unemployment fund from a nonmeritorious claim. Id. at 414, 645 P.2d 693. This court disagreed, concluding that the unemployment compensation act
makes no provision for the fixing or awarding of attorney fees to employers, but protects only the employee and his beneficiaries. So the Legislature has in the case of both the Industrial Insurance Act and the unemployment compensation act amended the provisions for attorney fees to make it clear that they shall be awarded only to claimants under the statutes.
Id. at 416, 645 P.2d 693 (citation omitted) (citing Harbor Plywood Corp. v. Dep't of Labor & Indus., 48 Wash.2d 553, 295 P.2d 310 (1956) ). Pennsylvania Life thus declined to extend the common fund doctrine to a prevailing employer's appeal because it would have been inconsistent with the attorney fee system established by the act. See also Rhoad, 102 Wash.2d at 426, 686 P.2d 483 (applying similar principles under the former workers' compensation arena).
¶ 10 Since these cases, there has been considerable development of our common fund doctrine jurisprudence in the context of automobile insurance policies. See Matsyuk v. State Farm Fire & Cas. Co., 173 Wash.2d 643, 649-650, 272 P.3d 802 (2012) (citing Hamm v. State Farm Mut. Auto. Ins. Co., 151 Wash.2d 303, 88 P.3d 395 (2004) ; Winters, 144 Wash.2d 869, 31 P.3d 1164 ). These cases establish that an automobile insurer that has paid first party benefits is required to pay a pro rata share of attorney fees anytime it seeks reimbursement out of a judgment or settlement with a tortfeasor. Id. Belling contends that these cases should be applied here.
¶ 11 While this is a question of first impression in this court, it is not a question of first impression in Washington appellate courts. In 2005, our Court of Appeals declined to apply the common fund doctrine to limit Employment Security's reimbursement of unemployment benefits from a workers' compensation award. See Delagrave v. Emp't Sec. Dep't, 127 Wash. App. 596, 605, 111 P.3d 879 (2005) (citing Mahler, 135 Wash.2d at 426-27, 436, 957 P.2d 632 ). The court concluded that if the legislature had wanted the department to partially waive unemployment reimbursement in such situations, it would have said so. The court noted that the statutory schema already allows for attorney fees in some circumstances:
RCW 50.32.160 provides for payment of attorney fees and costs out of the unemployment compensation administration *615 fund only if a commissioner's decision is reversed. A provision for attorney fees for recovery of overpayment is notably absent from this provision as well as from the overpayment provisions of the statutes. See RCW 50.20.085, .190. If the legislature had intended attorney fees to be available in overlapping benefits scenarios like the one here, the logical place to include such a provision would be within these three statutes.
Id. RCW 50.32.160 and RCW 50.20.085 have not been amended since Delagrave was published in 2005, which suggests the legislature did not take issue with the opinion.[5] The Delagrave court also relied on our case law that had previously held the common fund doctrine cannot be used to expand on statutory attorney fees in the employee benefits arena. Id. at 606, 111 P.3d 879 (quoting Leischner, 114 Wash.2d at 757, 790 P.2d 1234 ). Delagrave noted that the statutory scheme does permit waiver or partial waiver of reimbursement for reasons of equity and good conscience. Id. (quoting RCW 50.20.190(2) ). The court remanded for consideration whether equity and good conscience required a partial waiver of reimbursement. Id. at 613, 111 P.3d 879.
¶ 12 Belling does not offer a compelling argument for why we should overrule Delagrave and extend the common fund doctrine given the existing attorney fee provisions of Title 50 RCW and given that RCW 50.20.190(2) already allows claimants to argue equity and good conscience, in their cases, requires waiver. We decline to do so.
EQUITY AND GOOD CONSCIENCE
¶ 13 Next, we must decide whether the department erred in not waiving a portion of reimbursement under RCW 50.20.190(2) 's equity and good conscience standard. We stress that Belling does not ask this court to find reimbursement should be waived because it would be a hardship. We are mindful that there are facts in the record, mostly elicited by the ALJ, that suggest it would be. But at oral argument, Belling repeatedly stressed that he was not arguing that based on his individual situation the department should have to share attorney fees. Instead, he was arguing that the department should have to share attorney fees regardless of financial hardship. In essence, he argued for a presumption of fee sharing. A different outcome might occur in a case where the claimant brings an argument that fee sharing is equitable and that reimbursement would be a hardship. But that case is not before us. Instead, we are asked decide between Belling's theory that fee sharing is presumptively required or the department's theory that fee sharing is always impermissible. We reject both of their positions.
¶ 14 We assume without deciding that the arbitrary and capricious standard applies.[6] "An agency acts in an arbitrary and capricious manner if its actions are willful, unreasoning, and in disregard of facts and circumstances." Lenca v. Emp't Sec. Dep't, 148 Wash. App. 565, 575, 200 P.3d 281 (2009) (citing Wash. Waste Sys., Inc. v. Clark County, 115 Wash.2d 74, 81, 794 P.2d 508 (1990) ). The arbitrary and capricious standard of review is often used for review of agency discretionary decisions. Id. , RCW 34.05.570(3)(i).
¶ 15 Since Delagrave was announced, the department has taken steps to analyze whether it would be "against equity and good conscience" to require reimbursement out of a claimant's successful workers' compensation appeal in any given case. First, the commissioner issued an opinion it designated as precedent, In re Peltier, that specifically considered the impact of attorney fees accrued *616 in order to secure an award that included partially duplicative benefits. No. 04-2006-22057 (Wash. Emp't Sec. Dep't Comm'r Dec. No. 910, 2d Series Feb. 16, 2007), 2007 WL 5172355.[7] Peltier received about $10,000 in unemployment benefits while her workers' compensation claim was on appeal. Id. at * 1. Peltier prevailed on her appeal and was, coincidentally, awarded about $10,000. Id. After paying her attorney, she was left with about $7,000. Id. The commissioner partially waived reimbursement so that Peltier was not left in a worse position after her appeal. Id. at * 1-2. In essence, the commissioner discounted Peltier's workers' compensation award by the amount of her attorney fees before seeking reimbursement from that award.
¶ 16 Second, the commissioner revised the relevant administrative rules to include a nonexclusive list of considerations for determining whether it would violate equity and good conscience to require reimbursement. Wash. St. Reg. 08-21-056 (effective Nov. 9, 2008); WAC 192-220-030. Currently, that administrative rule most relevantly provides:
What does equity and good conscience mean in regard to overpayment waiver decisions?- RCW 50.20.190(2). (1) "Equity and good conscience" means fairness as applied to a given set of circumstances.
(2) It will be against equity and good conscience to deny waiver when repayment of the overpayment would deprive you of income required to provide for basic necessities including food, shelter, medicine, utilities, and related expenses. ...
(3) The department may also consider, but is not limited to, the following factors in determining whether waiver should be granted for reasons of equity and good conscience ....
WAC 192-220-030.[8]
¶ 17 Given Belling's arguments, the ALJ applied the Peltier calculation without also meaningfully considering hardship.[9] Under the Peltier calculation, the ALJ started with the $48,251.19 Belling was awarded, discounted the amount by the $19,730.57 Belling paid in fees and costs, and determined he received $28,850.62. Since that amount was more than the $22,924.00 Belling received in *617 unemployment benefits, the department declined to waive any portion of reimbursement. We stress that the decision to waive reimbursement under the "equity and good conscience" provision of RCW 50.20.190 must be based on the totality of the circumstances presented by the claimant. Each case must stand or fall on its own merits. But discounted for attorney fees, Belling still recovered more in workers' compensation than he was required to reimburse in unemployment benefits.[10] Given Belling's theory of the case that he is entitled to an offset, regardless of hardship, we cannot say that the department's decision was "willful, unreasoning, and in disregard of facts and circumstances." Lenca, 148 Wash. App. at 575, 200 P.3d 281 (citing Wash. Waste Sys., Inc., 115 Wash.2d at 81, 794 P.2d 508 ). We accordingly affirm. Belling's request for attorney fees is denied.
CONCLUSION
¶ 18 We hold that the department must meaningfully consider whether equity and good conscience requires fee sharing in any case where the claimant presents the argument. This consideration must be part of the department's overall consideration whether it is fair under the circumstances to require reimbursement. In this case, given the facts and argument presented to the department, we cannot say it erred in declining to reduce reimbursement to account for attorney fees and costs. Accordingly, we affirm.
WE CONCUR:
Fairhurst, C.J.
Madsen, J.
Gordon McCloud, J.
Yu, J.

Like the ALJ, we find no evidence that Belling was at fault for the duplicative payments.

RCW 50.32.160 grants a reasonable fee to claimants who prevail in court "payable out of the unemployment compensation administration fund." RCW 50.16.050 largely limits the use of this fund to employment security's administrative costs. It is funded separately from the unemployment fund, mostly by federal dollars and state general funds. See 42 U.S.C. § 502(a) ; Laws of 2018, ch. 299, § 222(2).

RCW 50.32.100 provides that all administrative adjudicative costs except for the claimant's attorney fees "shall be paid out of the unemployment compensation administration fund." This fund is partially financed with federal monies and is subject to significant restrictions. RCW 50.16.050 ; 42 U.S.C. §§ 501 -504.

RCW 51.52.120 provides successful claimants with prevailing party attorney fees in industrial insurance cases appealed to court.

The third statute cited (and the one most relevant here), RCW 50.20.190, has been updated several times, but not in any way that is relevant to attorney fee offsets. See Laws of 2013, ch. 189, § 4; Laws of 2011, ch. 301, § 17; Laws of 2007, ch. 327, § 1; Laws of 2006, ch. 13, § 21.

We note in passing that the only case to address the issue "upheld [the repayment order] since there is no showing of an abuse of discretion by the Commissioner in declining to waive the overpayment" without analysis. Berland v. Emp't Sec. Dep't, 52 Wash. App. 401, 410, 760 P.2d 959 (1988). "Abuse of discretion" is not an Administrative Procedure Act standard of review of adjudicative decisions. Ch. 34.05 RCW. We leave for another day, upon proper argument, whether abuse of discretion is the appropriate standard.

RCW 50.32.095 gives the commissioner authority to designate some opinions as precedents and publish them. These precedents are treated as persuasive authority in article IV courts. Martini v. Emp't Sec. Dep't, 98 Wash. App. 791, 795 & n.9, 990 P.2d 981 (2000) (citing Ronald M. Levin, Identifying Questions of Law in Administrative Law, 74 Geo . L.J. 1, 56 (1985) ); Wash. Const , art. IV.

The rule continues:
(a) Your general health, including disability, competency, and mental or physical impairment;
(b) Your education level, including literacy;
(c) Whether you are currently employed and your history of unemployment;
(d) Your future earnings potential based on your occupation, skills, and the local labor market;
(e) Your marital status and number of dependents, including whether other household members are employed;
(f) Whether an error by department staff contributed to the overpayment;
(g) Whether you refused or were ineligible for other government benefits because you received unemployment benefits; and
(h) Other factors indicating that repayment of the full amount would cause you undue economic, physical, or mental hardship.
(4) When determining whether a waiver of benefit overpayments may be granted based on equity and good conscience, the department must consider whether the employer or employer's agent failed to respond timely or adequately without good cause to the department's written request for claim information. This subsection does not apply to negotiated settlements.
(5) The decision to grant or deny waiver will be based on the totality of circumstances rather than the presence of a single factor listed in subsections (2), (3), and (4).

We note that the ALJ's decision does suggest a lack of hardship in several findings. For example, the ALJ's decision notes that Belling owns three vehicles, seemingly to support a conclusion that reimbursement would not be a hardship. Given that one of the vehicles lacked an engine, one was 50 years old, and the newest was 17 years old, we are highly skeptical that ownership suggests reimbursement would not be a hardship. The opinion also notes that Belling has no medical debt in collections. There is, however, suggestions in the record that Belling had medical debt. The fact none was in collections at the time of the hearing is not helpful in determining whether reimbursement would be a hardship. Most disturbingly, Belling testified that repaying the full amount the department requested would leave him "$3,645.18 in the hole." CP at 56-57.

Belting's appeal also resulted in permanent time-loss payments, a significant benefit we by no means mean to discount.